THE PEOPLE OF THE STATE OF NEW YORK ex rel. HOTEL ASTOR, Relator, v. JAMES J. SEXTON and Others, Defendants.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. HOTEL ASTOR, Relator, v. WILLIAM STANLEY MILLER and Others, Defendants.

Supreme Court, Special Term, New York County, December 23, 1935.

*Eugene Fay,* for the relator.

*Paul Windels, Corporation Counsel* [*Lawrence J. Rittenband, Oscar S. Cox* and *Hyman W. Kehl* of counsel], for the defendants.

ROSENMAN, J.   When the relator applied to the Supreme Court for the issuance of writs of certiorari to review the assessments of lots 21 and 36 for the years 1933 and 1934, its petitions stated that the market value of the lots 21 and 36 was $6,000,000 and the extent of overvaluation $2,850,000 for the year 1933, and stated that the market value of lots 21 and 36 was $5,500,000 and the extent of overvaluation was $2,850,000 for the year 1934.

The defendants, at the time they were required to file returns to the writs thus allowed on said petitions, did not raise any objection to the form of the petitions, except to state that they " make this return without prejudice to and without waiving, but expressly reserving the right of objection and exception to the jurisdiction of the court to issue said writ, and expressly reserving the right to move upon such grounds as we may be advised to quash said writ."

Nothing further was done by the defendants until October 8, 1935, when a motion upon an order to show cause was submitted to the court to quash the writs of certiorari with respect to lots 21 and 36 upon the ground that the petitions on their face were insufficient, as " the extent of alleged overvaluations are stated in the

aggregate for the two parcels." This motion was made at the opening of the trial. The relator insisted that since separate buildings were placed upon these lots at different times, which were subsequently joined and operated as a unit, it was impossible to admeasure the valuation of each parcel. But to overcome the objection raised, the relator thereupon moved to amend the petitions so as to substitute for the allegations of the overvaluations of lots 21 and 36 in the aggregate, allegations as to the alleged market value of each of the lots separately and the extent of claimed overvaluation of each of the lots separately. Decision was reserved on each of the motions.

Section 21 of the Tax Law provides that each parcel shall be separately assessed. Section 290 of the Tax Law requires the owner who attacks an assessment as erroneous by reason of overvaluation to state " the extent of such overvaluation " in the petition for the writ.

The defendants contend that the failure of the relator to state the extent of overvaluation as to each of these lots separately constitutes a jurisdictional defect which deprives this court of jurisdiction to hear the writ with reference thereto. The relator contends that the failure on its part to state separately the amounts of overvaluation is merely an irregularity which can be cured by amendment, and that since the defendants did not take advantage of the irregularity prior to the filing of the returns to the writs they have waived the irregularity.

If the amendment now requested is necessary to give the court jurisdiction, as is urged by the defendant, it would be too late, as the Statute of Limitations prescribed in section 291 of the Tax Law has expired.

The authorities on the question raised are not entirely in accord with each other. The Appellate Division has stated that " the omission to make the specifications required by the statute constituted a jurisdictional defect." (*People ex rel. O' Neil* v. *Purdy,* 188 App. Div. 485.) " While the courts are given wide power to correct defects, and should exerc'se this power wherever the defect is technical and stands in the way of the court performing its proper function of passing upon the merits of an honest claim, yet I think that this power is not wide enough to cover an amendment which would have the effect of giving the court jurisdiction of litigation which is already barred by a statute of limitation." (*People ex rel. Warren* v. *Purdy,* 177 N. Y. Supp. 45; affd., 171 App. Div. 936.) " The petition does not comply with the statutory requirement contained in section 290 of the Tax Law, requiring that the extent of the alleged overvaluation must be set forth in the petition

for the writ.  *  *  *  After the period of limitation has expired, the court may allow amendments of matters of form or expression, but cannot permit a jurisdictional fact to be inserted in the petition." (*People ex rel. Grossman* v. *Goldfogle*, 219 App. Div. 68.)

As opposed to these views the Appellate Division has held that " The purpose of the petition is to set in motion the statutory proceeding, and it has no probative force. The petition partakes of the nature of a pleading in an ordinary action.  *  *  *  The allegations of value in the petition have the force of admissions against the petitioner, but are not conclusive." (*People ex rel. Empire Mtge. Co.* v. *Cantor*, 198 App. Div. 317.) It has also been held that defects in the petition, similar to the ones in the cases above cited, may be cured by amendment, and that if objections thereto are not timely taken, they are deemed to be waived. In *People ex rel. N. Y. & R. B. R. Co.* v. *Tax Commissioners* (157 App. Div. 496; affd., 209 N. Y. 599) the court said: " Section 290 of the Tax Law provides that a petition for a writ of certiorari, if it is claimed that the assessment is erroneous for overvaluation, must state the extent of such overvaluation. Such allegations are wanting in these petitions, and if a motion had been made to quash the writs, the petitions would probably have been held to be insufficient; but the defendants did not move to quash the writs but made return thereto as though the petitions were sufficient. The defect was one which might easily have been cured by amendment, and I think that making return to the writs and submitting the questions involved to the court upon the merits constitutes a waiver of such defect."

Again, in the case of *Matter of City of New York* v. *Sloat* (116 App. Div. 815), where the same ground to quash the writ was urged, the court said: " The petition is only to get the writ, and if it is insufficient to authorize the writ to be granted a motion should be made to dismiss it and quash the writ before making return. If instead the assessors join issue on the writ by making return to it they waive the insufficiency of the petition."

Also, in the case of *People ex rel. Empire Mtge. Co.* v. *Cantor* (190 App. Div. 512) the court stated: "At no time was objection made that the application was not in proper form or that the statements therein contained were not sufficient.  *  *  *  It is well settled that technical objections to the form or sufficiency of pleadings are waived, if not taken n advance, by proceeding to hear the case upon the merits. This rule applies to proceedings of this nature before the tax commissioners.  *  *  *  By proceeding to hear the objections specified, they waived objections to the sufficiency of the application."

The lack of harmony between the cases cited is self-evident. The cases above quoted were all decided prior to the case of *People ex rel. City of New York* v. *Keeler* (237 N. Y. 332), where the relator stated in its petition that the property as a whole had been overvalued to the extent of $400,000, but did not state with reference to the several parcels the proportion of excess to be distributed to each. The court there said: " This is an irregularity that would have just fied the dismissal of the petition if timely objection had been taken." This case followed the case of *People ex rel. Gleason* v. *Purdy* (223 N. Y. 88), where the court held that objections of this nature were " highly technical," saying: " The sufficiency of the petition was not challenged in this case. No motion to quash the writ on that ground was made. * * * If the question had been raised, the court had power to correct by amendment all defects in matters of procedure and award the appropriate relief."

A little earlier the Court of Appeals had reversed the Appellate Division on the dissenting opinion in that court by Clarke, P. J., which dissent permitted an amendment to the petition to be made by inserting the name of the real owner of the property instead of the one incorrectly verifying the petition. (*People ex rel. Durham Realty Corp.* v. *Cantor*, 201 App. Div. 834; revd. on dissenting opinion of Clarke, P. J., 234 N. Y. 507.) In that case objections were raised similar to the ones made in the case of *People ex rel. Warren* v. *Purdy* (*supra*), and, in effect, overrules that case.

By failure of the relator to adhere strictly to the requirements of the statute the defendants claim this court did not have jurisdiction of the subject-matter of the action, and that they have reserved their rights to object thereto in the return to the writs. It is well settled that an objection that the court has not jurisdiction of the subject-matter of the action is never waived by a litigant and may even be raised for the first time on appeal. (Civ. Prac. Act, § 279; *Robinson* v. *Oceanic Steam Nav. Co.*, 112 N. Y. 315, 324; *McConnell* v. *Williams Steamship Co., Inc.*, 239 App. Div. 393; *Matter of Walker*, 136 N. Y. 20; *Payne* v. *N. Y., Sus. & W. R. R. Co.*, 157 App. Div. 302; *Baltimore Pub. Co.* v. *Swedish Am. Mex. Line, Ltd.*, 143 Misc. 229.) It thus follows that if the defect is as the defendants claim, the reservation of the right in the returns to the writs to object thereto was superfluous and carried with it no effect whatever, for even at this time the defendants, without such reservation, could object to the court's jurisdiction.

The petition for the writ of certiorari and the return thereto have been likened to the complaint and answer n an ordinary action. (*People ex rel. Manhattan R. Co.* v. *Barker*, 152 N. Y. 417; *People ex rel. Buffalo B. P. Assn.* v. *Stilwell*, 190 id. 284.) In an action

where irregularities or defects appeared upon the face of the complaint and the defendant has failed to take advantage of the appropriate sections of the Civil Practice Act by making timely objections thereto, objections to such defects and irregularities are deemed waived.

In the light of the latest expressions of the Court of Appeals, I conclude that the defect here is a mere irregularity which did not deprive this court of jurisdiction. Therefore, the defects in the petitions now under consideration with respect to lots 21 and 36 are mere procedural irregularities. By failure of the defendants to make timely objection thereto prior to the returns, they have waived their right to such objections at this time. I accordingly deny the defendant's motions to quash the writs as to those lots and grant the relator's motion to amend.

Taking up the merits of the application, I conclude that there was not sufficient evidence to overcome the presumption of the correctness of the assessment by the city upon the land unimproved. The expert testimony adduced by the relator was not sufficient to overcome the presumption of the correctness of the assessment, as substantiated by the city's expert. In fact, expert opinions at the present time as to unit lot values as of the taxable dates for 1933 and 1934 are of little practical value to the court. The current depression and the consequent absence of any real estate trading in a free market at any time near the dates involved, render it impossible to base an opinion as to unit lot values on actual sales.

Mr. Watson's testimony did not justify a reduction, as urged by the relator in its brief. What he did was to take lots 21 and 36 together, because of the relator's petitions which lumped them together in one parcel before the amendment was urged at the trial. He expressed his opinion as to the aggregate value, and concluded that the city assessment was reasonable. The testimony cannot be construed to represent any independent opinion as to the value of separate lots.

The income derived from the Hotel Astor is no criterion of its value. The relator, indeed, admits this in its brief. It is reasonably doubtful whether any hotel income is a very substantial factor in determining its real estate value, since the running of a hotel is in great degree a matter of business rather than one of rental. This is particularly true of the Hotel Astor, where the testimony appears to be that the rental of rooms plays a very minor part in the gross income. The major portion of the gross operating income was realized from sources other than the rental of rooms.

The method used by the relator's expert to figure the rental value of the hotel is one which cannot form the basis of a judgment by this court. While it may perhaps furnish a good rule of thumb upon which to base a business transaction in the sale or purchase of a hotel, it has no basis in the rules of evidence. Besides, it is based upon what is, concededly, an inadequate structure and at a rate per room which is figured at depression prices. Nor can the court found a judgment upon the method used by such expert in constructing a hypothetical new two-story and basement building. It is too speculative and uncertain to sustain a finding of value. (*Matter of City of New York* [*Blackwell's Island Bridge*], 118 App. Div. 272, 274.)

Under the circumstances, where no other means appear to be available for fixing the value of the building itself, as distinguished from the land, the reproduction cost thereof should enter into the consideration. The cases have held that where the actual market is limited, reproduction cost of buildings is a good criterion. (*People ex rel. New York Dock Co.* v. *Cantor*, 208 App. Div. 52; *People ex rel. New York Stock Exchange B. Co.* v. *Cantor*, 221 id. 193; affd., 248 N. Y. 533.)

The only testimony with reference to reproduction cost was given by Mr. Davis. I believe that the value which he placed upon the building was entirely too high, in view of the value which the city assessors themselves placed upon it. Furthermore, no explanation has been made, nor can an explanation be made, of the increase in the assessment of the building on lot 21 from $850,000 for 1933 to $875,000 in 1934. The value of the buildings on lots 21 and 36 should both have been reduced between the two years. Mr. Davis, the city's expert, in fixing the cost of reproduction of the buildings, allowed approximately a ten per cent decrease between 1933 and 1934. I am of the opinion that that would be a reasonable reduction to be made from the 1933 figures to fix the 1934 taxes. In other words, ten per cent of $850,000, or $85,000, should be deducted from the assessment for the land and buildings on lot 21 for the year 1934; and ten per cent of $900,000, or $90,000, should be deducted from the total assessment for land and buildings on lot 36 for the year 1934.

In addition, and in accordance with the testimony of the city's expert, the value of the land on lot 20 should be reduced from $75,000 to $67,650 for the year 1933, and from $69,000 to $62,250 for the year 1934. Similarly, the total valuation for the land and building on lot 20½ for the year 1933 should be reduced from $100,000 to $93,000 for the year 1933, and from $95,000 to $86,000 for the year 1934.

Settle findings and conclusions.