[No. 197-3.   Division Three.   May 26, 1971.]

*In the Matter of the Estate of* JAKE SOFFA, *Deceased.*
ORVILLE CLEMONS, *Respondent,* v. DONNA FOSBACK,
*Appellant.*

*Robert E. Anderson,* for appellant.

*Sid Buckley* and *John T. Raftis* (of *Raftis & Raftis*), for respondent.

GREEN, J.—Jake Soffa died testate. Donna Fosback, the residuary legatee, filed a motion in the probate to set aside an executor's deed transferring certain real estate to Orville Clemons. From a denial of the motion and the entry of a decree of distribution, she appeals.

Prior to 1953, Clemons was renting the real property in question from Soffa. In 1953 a fire occurred in the building on the premises. During reconstruction of the building, the contractor and Soffa had a dispute resulting in the contractor's leaving the building unfinished. Thereafter, it was agreed Clemons would finish the building. To this end about $3,500 was expended by Clemons. No claim was ever asserted against Soffa for these expenses and none is urged in these proceedings.

On September 15, 1958, Soffa and Clemons entered into a written lease with respect to the property. The lease was

for 10 years at a monthly rental of $80, with Clemons having an option to purchase the property for $10,000 during or at the end of the term. All rental payments were to be applied on the purchase price. These payments were almost equal to the purchase price.

Subsequent to the execution of the lease, Soffa's health began to fail. In May 1960 guardianship proceedings were instituted. Clemons, a long-time friend of Soffa, was named guardian. Thereafter, Clemons made rental payments to himself as guardian and reported them in the guardianship accounts approved from time to time by the court. At the expiration of the lease on September 15, 1968, substantial rental payments were past due. On that date, Clemons orally notified the attorney[1] for the guardianship that he was prepared to pay the remainder of the purchase price and desired a deed to the property pursuant to the option. The attorney, because he considered Soffa's demise imminent, informed Clemons it would be better for the executor to handle it than for him as guardian to make a deed to himself.

Soffa died October 23, 1968. His nonintervention will was admitted to probate; the attorney for the guardianship was appointed and confirmed as executor.

Although the probate was commenced in November 1968, the guardianship proceeding was not closed until January 31, 1969. On March 3, 1969, Donna Fosback filed a request for notice and copies of all proceedings in the probate. There is no evidence this request was ever served upon the executor-attorney for the estate. On August 6 Donna Fosback moved for an order directing Clemons to show cause as to the circumstances surrounding his purchase of the property; an order to show cause was apparently never issued. The inventory and appraisement of the estate was signed by the appraiser on August 12 and filed September 15. This inventory listed the property as subject to "Sale

---

[1]The attorney on this appeal was not the attorney who represented the guardianship or who later became the executor-attorney of Soffa's estate.

Agreement from Jake Soffa, a widower, as vendor, to Orville G. Clemons and Rose N. Clemons, his wife, dated September 15, 1958, on which there was a balance due at death of vendor . . . of $3,720.00."

On September 30, 1969 the executor filed his final account and petition for distribution. On October 1 the court, upon petition and without notice, entered an ex parte order directing the executor to execute a deed conveying the property to Clemons. On October 17 Donna Fosback filed motions in the guardianship and probate and secured entry of orders to show cause directed to Clemons and the executor requiring them to explain why the property should not be included in the probate. Thereafter, additional motions were filed to set aside the deed to Clemons and vacate the final order in the guardianship. On December 12 the executor amended his final account, alleging that Clemons was informed on June 2, 1969 the deed and title were ready, whereupon Clemons paid $3,720 to the executor who held the money in his trust account until the transfer of the property to Clemons. Objections were filed to this amendment. All of these various motions, objections and orders filed and secured by Donna Fosback were consolidated for hearing. Following an evidentiary hearing, they were denied and a decree of distribution was entered upon the executor's final account.

Donna Fosback raises several assignments of error. The dispositive issue is whether the option to purchase was properly exercised and the deed issued.

It is contended the option was not properly exercised because of the violation of two provisions in the lease: (1) Clemons was in default in payment of rent thereby violating a provision that no breach or nonobservance of any covenant in the lease should exist when the option was exercised; and (2) oral notice of the exercise of the option violated a provision requiring the notice to be in writing. In the factual setting of this case, we are unable to agree with these contentions.

The record is clear that on September 15, 1968,

Clemons requested a deed to the property from the attorney for the guardianship stating he was prepared to pay the remainder of the $10,000 purchase price. The attorney requested that Clemons await the demise of Mr. Soffa, which was imminent, and receive the deed from the executor. It is apparent the executor-attorney upon his appointment considered that on September 15, 1968 the lease had been converted to a contract to sell and it was so reported in the estate inventory. When the executor informed Clemons on June 2, 1969 the title insurance and deed were ready, Clemons delivered the remainder of the purchase price to the executor and later received the executor's deed. In these circumstances, we are unable to agree that the transaction should be set aside solely because the notice was not given in writing. The cases relied upon by Donna Fosback in support of her contention have been considered but are distinguishable and not apposite.[2] Likewise, we are unable to accept the contention that the transaction should be set aside because Clemons was in default at the time he gave oral notice. On the last day of the lease, Clemons offered and was willing to pay the full balance of the purchase price. Failure to complete the transfer immediately was solely on the request of the attorney for the guardianship, Soffa's personal attorney. To adopt the contentions of Donna Fosback would be tantamount to a forfeiture of Clemons' payments on the purchase price. It is well settled that forfeitures are not favored in the law. *Dill v. Zielke,* 26 Wn.2d 246, 252, 173 P.2d 977 (1946); *Will Rogers Farm Agency, Inc. v. Stafford,* 4 Wn. App. 500, 502, 482 P.2d 336 (1971).

The record indicates Clemons, Soffa and his attorney were all long-time friends in a relatively small community. The informality of dealings between these parties resulted from this trusting relationship. The lease negotiated be-

---

[2]*Gray v. Lipscomb,* 48 Wn.2d 624, 296 P.2d 308 (1956); *Jones v. Dexter,* 48 Wn.2d 224, 292 P.2d 369, 51 A.L.R.2d 1399 (1956); *Rademacher v. Rademacher,* 27 Wn.2d 482, 178 P.2d 973 (1947); *McDuffie v. Noonan,* 176 Wash. 436, 29 P.2d 684 (1934).

tween Soffa and Clemons was at arm's length and prior to the guardianship. The validity of this lease is not questioned. Clemons testified Soffa knew he was making intermittent rental payments and was going to purchase the property at the end of the lease. In fact, this was understood between Clemons and Soffa when, after the fire, Clemons finished constructing the building on the premises. The lease itself corroborates this position because the amount of rental paid under the lease is only $400 short of the $10,000 purchase price. It is inconceivable any other conclusion could be drawn from these facts.

However, the whole transaction becomes suspect in light of the fact that Clemons, lessee, became Clemons, guardian of the lessor—potentially conflicting positions. While it is readily understandable how this relationship came about, we cannot condone and must be highly critical of the fact Clemons allowed himself to be placed in this position and, further, that the attorney and trial court permitted Clemons to become guardian in these circumstances. However, upon an examination of the entire record, we find no evidence Clemons or the attorney for the guardianship—later the executor-attorney for the estate—anywise acted in bad faith; neither do we find there was any overreaching between the parties. Clemons agreed to pay $10,000 for the property and there is substantial evidence to support the court's finding that $10,000 was paid. The deed was issued. The transaction was completed. Soffa and his estate received the benefit of the bargain. We find no error in the trial court's refusal to set aside the deed.

Error is also assigned to the admission of testimony by Clemons with respect to his completing construction of the building after the fire in 1953 thereby expending $3,500. The objection at trial was based upon a contention the evidence was offered to vary the terms of a written lease in violation of the parol evidence rule. The testimony was not offered to vary the terms of the lease nor to claim credit for $3,500 against the purchase price. We find no error in overruling of the objection upon this ground. It is also urged

the evidence was inadmissible under the deadman's statute, RCW 5.60.030. Since this ground was not urged in the trial court, it cannot be considered for the first time on appeal. *Symes v. Teagle*, 67 Wn.2d 867, 410 P.2d 594 (1966).

Error is assigned to the admission of exhibits 9 and 10 consisting of receipts for rental payments urging for the first time violation of the deadman's statute and lack of relevancy. Since no objection was made in the trial court on this or any ground, the error will not be considered.

Error is assigned to the court's failure to award interest against Clemons for delinquent rental payments. The trial court refused to do so because there was admitted without proper objection testimony of an arrangement, with Soffa's acquiescence, as to intermittent payments. We are not inclined to disturb the trial court's conclusion.

It is contended there is no substantial evidence to support several of the court's findings and conclusions. A review of the record shows the contrary.

Error is also assigned to the award of executor and attorney fees. We find no abuse of discretion by the trial court in making the award.

Respondent's application for attorney fees on appeal is denied.

Judgment affirmed.

MUNSON, C.J., and EVANS, J., concur.

Petition for rehearing denied June 28, 1971.

Review denied by Supreme Court July 26, 1971.